UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

JAMES WASHINGTON,

                                Plaintiff,

                -against-                      **COMPLAINT AND JURY DEMAND**

THE CITY OF NEW YORK, SERGEANT CLAUDIO
RAMIREZ, TAX # 907114, UNDERCOVER # 00082,
UNDERCOVER CO 082, DETECTIVE TAX # 925988,
AND DETECTIVE TAX # 916966, JOHN DOE ## 1-3,

                                Defendants.

------------------------------------------------------------------------ x

## **PRELIMINARY STATEMENT**

1. This is a civil rights action in which Plaintiff seeks relief for the violation of his rights secured by 42 USC §1983 and the Fourth and Fourteenth Amendments to the United States Constitution, and the laws and Constitution of the State of New York.

2. The claims arise from a series of events commencing approximately August 22, 2018 and terminating March 12, 2019 in which employees of the New York City Police Department ("NYPD"), acting under color of state law, intentionally and willfully subjected plaintiff to negligence, false arrest and malicious prosecution.

3. Plaintiff seek monetary damages (special, compensatory, and punitive) against defendants, as well as an award of costs and attorneys' fees, and such other and further relief as the Court deems just and proper.

## **PARTIES**

4. Plaintiff James Washington is a resident of New York County in the State of New

York.

5. The City of New York (or "the City") is a municipal corporation organized under the laws of the State of New York. At all times relevant hereto, Defendant City, acting through the New York Police Department (or "NYPD"), was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters and was responsible for the appointment, training, supervision, discipline and retention and conduct of all NYPD personnel. In addition, at all times here relevant, Defendant City was responsible for enforcing the rules of the NYPD, and for ensuring that the NYPD personnel obey the laws of the United States and the State of New York.

6. Sergeant Claudio Ramirez, Tax # 907114, Undercover # 00082, Undercover CO 082, Detective Tax # 925988, Detective Tax # 916966, and John Doe ## 1-3 (collectively, "the individual defendants") were at all times here relevant, police officers or detectives of the NYPD, and as such were acting in the capacity of agent, servant and employee of the City of New York. On information and belief, defendants were personally involved in the illegal arrest of Plaintiff and/or failed to intervene in the actions of their fellow officers and are sued in their individual capacity. Each was assigned, in about August, 2018, to the NYPD Command "NBBN", also known as "Brooklyn North Narcotics".

7. At all times here mentioned defendants were acting under color of state law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the City and State of New York.

## FACTUAL ALLEGATIONS

8. On approximately August 22, 2018, UC CO 082 or UC OOO82 falsely identified Plaintiff in a photo array as an individual who had been involved in a sale of narcotics to him in

Williamsburg, Brooklyn. On information and belief, that identification was a deliberate misidentification by the undercover officer, working in concert with the other individual defendants. On information and belief, the defendants included Plaintiff's photograph in the photo array solely for the purpose of making him a suspect in the alleged drug sale, despite knowing, from videotaped evidence in their possession, that Plaintiff was not the person who participated in the drug sale, and the identification procedure was invalid because it was so defective that a reasonable officer could not use it to find probable cause.

9. Some time subsequent to August 22, 2018, on information and belief, UC CO 082 or UC OOO82, and one or more of the other individual defendants, intentionally falsely testified before a Grand Jury convened in Manhattan by the Special Narcotics Prosecutor for the City of New York, and obtained an indictment against Plaintiff. On information and belief, the indictment was the product of fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith, and the Grand Jury was not informed of the limited value of the identification.

10. After the indictment, Plaintiff was arrested of February 6, 2019. He was held approximately 48 hours, part of that time at the Manhattan Detention Center, and then ultimately brought before a New York County Supreme Court judge, where he was arraigned on serious drug conspiracy charges involving many other people.

11. A mere two court appearances later, the charges against Plaintiff were dismissed after the DA's office and the court viewed Plaintiff's photo and the video of the drug transaction in question, where it was patently obvious that Plaintiff was not the person involved in the transaction.

12. In fact, defendants had in their possession not one, but *six* videos of the same individual

selling drugs to Undercover 00082, who Undercover 00082 claimed was Plaintiff, and it was clear, in every single one of them, that Plaintiff was not the individual depicted in the videos. It took a Supreme Court judge and a prosecutor no time at all to determine as much from viewing one video, and they dismissed the case.

13. Upon information and belief, the individual defendants were personally involved in the decision to arrest Plaintiff, and/or personally participated in the apprehension of plaintiff, and/or personally participated in the identification procedure involving Plaintiff's photograph, and/or the decision to recommend charges against him, and/or the processing of his arrest.

14. Defendants lacked probable cause or reasonable suspicion to believe Plaintiff had been involved in any illegal activity.

15. During all of the events above described, defendants acted maliciously and with intent to injure plaintiff.

## DAMAGES

16. As a direct and proximate result of the acts of defendants, Plaintiff suffered the following injuries and damages:

   a. Violation of his rights pursuant to the Fourth and Fourteenth Amendments to the United States Constitution to be free from an unreasonable search and seizure;

   b. Emotional trauma and suffering, including fear, embarrassment, humiliation, emotional distress, frustration, extreme inconvenience, anxiety;

   c. Loss of liberty.

## FIRST OF ACTION
42 USC § 1983- False Arrest and False Imprisonment

17. The above paragraphs are here incorporated by reference.

18. Defendants subjected plaintiff to false arrest, false imprisonment, and deprivation of liberty without probable cause.

19. Defendants intended to confine plaintiff, plaintiff was conscious of his confinement and did not consent to his confinement.

20. Defendants, their officers, agents, servants and employees, were responsible for plaintiff's arrest, detention and imprisonment during this period of time. Defendant City, as employer of Officer Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior.*

21. As a direct and proximate result of the misconduct and the abuse of authority detailed above, Plaintiff sustained the damages described above.

## SECOND CAUSE OF ACTION
Malicious Prosecution

22. The preceding paragraphs are here incorporated by reference.

23. Defendants, acting with malice, initiated a prosecution against Plaintiff and caused him to be prosecuted.

24. Defendants had no reasonable chance at prevailing against Plaintiff.

25. The criminal proceedings were dismissed in Plaintiff's favor.

26. Defendants have deprived Plaintiff of his civil, constitutional and statutory rights and have conspired to deprive him of such rights and are liable to plaintiffs under 42 USC § 1983, New York State common law, and the New York State Constitution. Defendant City, as employer of Officer Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior.*

27. As a result of the malicious prosecution implemented by defendants, Plaintiffs was damaged.

### **THIRD CAUSE OF ACTION**
U.S.C. § 1983- False Arrest and Malicious Prosecution

28. The above paragraphs are here incorporated by reference.

29. Defendants have deprived plaintiff of his privileges guaranteed by the Fourth Amendment to the United States Constitution, and have conspired to deprive him of such rights and are liable to plaintiff under 42 USC § 1983.

30. Defendants arrested and prosecuted Plaintiff without probable cause or lawful justification. By doing so, these defendants falsely arrested and maliciously prosecuted Plaintiff, depriving him of his right to be free of unreasonable searches and seizures, pursuant to the Fourth and Fourteenth Amendments to the United States Constitution. Defendants' conduct also deprived Plaintiff of his right to due process of law, pursuant to the Fourteenth Amendment of the United States Constitution.

31. Moreover, each of the individually named defendants failed to intervene in each other's obviously illegal actions.

32. Plaintiff has been damaged as a result of defendants' wrongful acts.

### **FOURTH CAUSE OF ACTION**
42 U.S.C. § 1983 – Municipal Liability

33. The above paragraphs are here incorporated by reference.

34. The City is liable for the damages suffered by Plaintiff because, after learning of its employees' repeated violations of New Yorkers' constitutional rights, the City has: failed to remedy the wrong; created a policy or custom under which unconstitutional practices regularly occur and even thrive; and has been grossly negligent in managing subordinates who cause the unlawful events. The result of the City's inaction is a culture within the NYPD where the same officers, the same units, and the same precincts repeatedly and routinely engage in acts of

6

misconduct. By failing to properly train, supervise, and discipline its employees, agents, and servants, the City effectively encourages illegal, immoral, and unprofessional behavior.

35. On numerous occasions over the span of many years, the City of New York has been alerted to the frequency of false arrests charges brought by its police officers. Despite having acquired such knowledge, the City has refused to appropriately sanction its employees' illegal behavior.

36. There is no formal monitoring or reporting system to track the outcome of arrests, so that false arrests, and illegal searches and seizures, even when identified by judges or the six prosecutors' offices of New York City, are routinely unreported to and unaddressed by the supervisors of the offending officers.

37. The City's deliberate indifference to civil rights violations committed by individual police officers, as well as patterns of misconduct committed by the same officers or occurring in the same precinct, has caused the constitutional violations against Plaintiff in this case.

**THE CITY FAILED TO TRACK LAWSUITS, THEREBY SEVERING ANY POTENTIAL DETERRENT VALUE OF CIVIL RIGHTS ACTIONS**

38. The City has been aware for some time – from civil rights lawsuits, Notices of Claim, complaints filed with the Civilian Complaint Review Board ("CCRB"), City Council hearings, newspaper reports, criminal cases resulting in declined prosecutions and dismissals, and judicial rulings suppressing evidence and finding officers incredible as a matter of law – that a disturbing number of NYPD officers unlawfully search and seize citizens without probable cause, bring charges against citizens with no legal basis, perjure themselves in charging instruments and through testimony, and fail to intervene in and report the obviously illegal actions of their fellow officers.

39. It is well documented that the number of claims against the NYPD has doubled in

recent years and has cost taxpayers more than $1 billion.[1]  Despite these staggering figures, the City has repeatedly resisted attempts to catalog even the most basic information gleaned from civil rights lawsuits that could improve training, leadership, supervision, and discipline in the NYPD.  Although certain police officers, units, and precincts have been found to have violated New Yorkers' constitutional rights *repeatedly*, the City refuses to track the data.[2]

40.   Courts – including this nation's highest court – assume that civil rights lawsuits deter police misconduct.  *See Wyatt v. Cole*, 504 U.S. 158, 161 (1992) ("The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails.") (citing *Carey v. Piphus,* 435 U.S. 247, 254-257 (1978)); *Hudson v. Michigan*, 547 U.S. 586, 598 (2006) ("As far as we know, civil liability is an effective deterrent [to civil rights violations], as we have assumed it is in other contexts.") (citing *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 70 (2001) and *Nix v. Williams,* 467 U.S. 431, 446, (1984)).

---

[1] *See* Barry Paddock, Rocco Parascandola, John Marzulli, & Dareh Gregorian, *Exclusive: Detective is NYPD's most-sued cop, with 28 lawsuits filed against him since 2006*, N.Y. DAILY NEWS, Feb. 16, 2014, http://www.nydailynews.com/new-york/lawsuits-nypd-double-decade-costing-taxpayers-1b-article-1.1615919#ixzz2ttdX4ZkE (reporting that the number of claims against the NYPD doubled between 2004-2014, to a record high of 9,570 lawsuits filed in 2012, costing taxpayers nearly $1 billion); Colleen Long & Jennifer Peltz, Associated Press, *Nearly $1B in NYC police payouts*, Yahoo! News (October 14, 2010, 7:44 PM), http://news.yahoo.com/ap-investigation-nearly-1b-nyc-police-payouts.html (reporting that, in the decade ending in 2010, the City paid out nearly one billion dollars to resolve claims against the NYPD); Caroline Bankoff, *The City Has Paid Almost Half a Billion Dollars in NYPD-Related Settlements Over the Past 5 Years*, NYMag.com, Oct. 12, 2014, http://nymag.com/daily/intelligencer/2014/10/428-million-in-nypd-related-settlements-paid.html (reporting that, between 2009-2014, New York City paid out more nearly $500 million to settle NYPD-related cases); see also City of New York, Office of the Comptroller Claims Report FY 2012, 30, June 4, 2013, https://www.documentcloud.org/documents/1375759-fy-2012-claims-report.html (noting that, in fiscal year 2012, so-called "police action claims," which are claims that result from false arrest or imprisonment, police shootings, excessive use of force, assault, or failure to protect, cost the City $64.4 million, and that in fiscal year 2011, the City paid out $60.2 million in police action claims).

[2] *See, e.g.*, Barry Paddock, et al., *Exclusive: Detective is NYPD's most-sued cop, with 28 lawsuits filed against him since 2006*, N.Y. DAILY NEWS, Feb. 16, 2014, http://www.nydailynews.com/new-york/lawsuits-nypd-double-decade-costing-taxpayers-1b-article-1.1615919#ixzz2ttdX4ZkE ("The [Daily] News' investigation was centered around the results of a Freedom of Information Law request for a list of lawsuits filed against officers who have been sued 10 or more times over the past decade. The city Law Department provided the names of 51 officers and 463 cases.  A News search found an additional 146 cases against the officers, and four other officers who should have been included in the response — calling into question the city's ability to track these cases.").

41.     However, because the City of New York refuses to track civil rights lawsuits, such suits do not serve the deterrent purpose envisioned by the Supreme Court.  By failing to keep track of this crucial data – which could save lives as well as taxpayer money – the City has created a system in which lawsuits are severed from any potential deterrent effect.

**THE CITY FAILS TO HOLD POLICE OFFICERS PERSONALLY FINANCIALLY LIABLE, RESULTING IN A COMPLETE LACK OF ACCOUNTABILITY**

42.     The City of New York is also liable in this case because, by habitually indemnifying police officers who have acted unconstitutionally, the City isolates such officers from accountability.[3]  The effect – yet again – is that civil rights lawsuits do not serve a deterrent purpose.  "It is almost axiomatic that the threat of damages has a deterrent effect, *surely particularly so when the individual official faces personal financial liability*." *Carlson v. Green*, 446 U.S. 14, 21, (1980) [emphasis added] (citing *Imbler v. Pachtman*, 424 U.S. 409, 442 (1976)) [footnote omitted].

43.     Furthermore, civil rights lawsuits against NYPD officers have no impact on the officers' careers, regardless of the expense to the City to defend a police misconduct case, and even when the same officers are named in multiple lawsuits, because settlements of civil claims are ordinarily not even noted in an officer's personnel file.[4]

44.     For decades, the City has been on notice that certain officers and precincts are disproportionately responsibility for civil rights lawsuit liability.  Nonetheless, the City has failed to take action to hold officers or precincts accountable, and has failed to investigate to what extent certain officers, units, and precincts are disproportionately responsible.

---

[3] *See* Eric Jaffe, *When Cops Violate Civil Rights, It's City Taxpayers Who Pay*, CITYLAB, Dec. 4, 2014, http://www.citylab.com/crime/2014/12/when-cops-violate-civil-rights-its-city-taxpayers-who-pay/383419/ (reporting that taxpayers almost always satisfy both compensatory and punitive damages awards entered against police officers).

[4] Association of the Bar of the City of New York, Committee on New York City Affairs, "The Failure of Civil Damages Claims to Modify Police Practices, and Recommendations for Change,"  March 2000, *available at* http://www2.nycbar.org/Publications/reports/print_report.php?rid=32.

45. In 1999, Comptroller Alan Hevesi, in a memo to Police Commissioner Howard Safir, stated that there was "a total disconnect" between the settlements of civil claims – even substantial ones – and NYPD discipline of officers.[5] Hevesi continued:

> As a result, the NYPD does not learn of potential problem officers, fails to take curative action, and not infrequently fosters a situation in which an officer will engage in another act of violation, resulting in harm to another person and further damages from the City. More important, study of a large number of cases might well reveal patterns of misconduct against which the NYPD could and should take systematic management action.[6]

46. The Comptroller recommended that the police department "analyze . . . settled claims, and take steps to review the officers' performance and propensity to" violate New Yorkers' civil rights.[7]

47. The City has not heeded Hevesi's advice, and the "total disconnect" remains fully in place today. The pattern is now all too familiar: the City pays vast sums of money to resolve cases where New Yorkers' constitutional rights have been violated, while the NYPD does nothing to financially incentivize its officers to change their behavior, and fails to investigate or address the underlying causes of such violations.

48. The City is aware that all of the aforementioned has resulted in violations of citizens' constitutional rights. Despite such notice, the City has failed to take corrective action. This failure and these policies caused the officers in the present case to violate plaintiff's civil rights, without fear of reprisal.

49. Plaintiff has been damaged as a result of the City's deliberate indifference.

**WHEREFORE**, Plaintiff demands judgments against the defendants, jointly and

---

[5] *Id.*

[6] *Id.*

[7] *Id.*

severally, as follows:

  A.  In favor of Plaintiff in an amount to be determined by a jury for each of Plaintiff's causes of action;

  B.  Awarding Plaintiff punitive damages in an amount to be determined by a jury;

  C.  Awarding Plaintiff reasonable attorneys' fees, costs and disbursements of this action; and

  D.  Granting such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED: January 8, 2021
     Brooklyn, New York      Respectfully yours,

                  By: Andrew B. Stoll
                  Stoll, Glickman & Bellina, LLP
                  Attorneys for Plaintiff
                  300 Cadman Plz. W. 12th Floor
                  Brooklyn, NY  11201
                  (718) 852-3710
                  astoll@stollglickman.com

TO: City of New York
   Corporation Counsel Office
   100 Church Street
   New York, NY  10007